**UNITED STATES of America**

v.

**Frank R. CARCAISE, Robert T. Schwer, Steven A. Stepanian, R. William Habel and Martin Kingshill.**

**No. 77–67–Orl–Cr–R.**

United States District Court,
M. D. Florida,
Orlando Division.

Jan. 5, 1978.

Robert A. Leventhal, Asst. U. S. Atty., Orlando, Fla., for plaintiff.

Hubert W. Williams, Orlando, Fla., for defendant Frank R. Carcaise.

James E. Taylor, Jr., and William E. Kreuter, Orlando, Fla., for defendant Robert T. Schwer.

C. Harris Dittmar, Jacksonville, Fla., for defendant Steven A. Stepanian.

James E. Shepherd, Orlando, Fla., for defendant R. William Habel.

Thomas A. Howard, Detroit, Mich., for defendant Martin Kingshill.

## MEMORANDUM OF DECISION

REED, District Judge.

Defendant Stepanian's Motion to Dismiss or in the Alternative for Discovery of Matters Pertaining to the Grand Jury filed 9 November 1977 alleged as a ground for the dismissal of the indictment: (1) that the indicting grand jury was given "summarized testimony presented to the first grand jury", and (2) that an unauthorized person, to-wit, Robert C. Weaver, appeared before the grand jury. An evidentiary hearing was held on this motion on 2 December 1977 at which the following facts were developed.

The charges were considered first by the "Urban" grand jury which was discharged on 8 June 1977 without returning an indictment. The case was thereafter considered by the "Pressley" grand jury which returned the indictment on 28 September 1977. The case was handled before the indicting grand jury by Robert Leventhal, an Assistant United States Attorney, and Robert C. Weaver and David Addis. Both Mr. Weaver and Mr. Addis at all material times were attorneys employed by the United States Department of Justice. In February of 1976, before the indicting grand jury ever met with respect to the case, Mr. Weaver was authorized by the Justice Department to conduct grand jury investigations in the Middle District of Florida.

Mr. Weaver testified that no summaries of testimony presented to the Urban grand jury were presented to the indicting grand jury. Mr. Weaver did reveal, however, that postal inspector Charles Ray Neatherton was appointed by the Urban grand jury to take custody and control of a mass of documents which that grand jury had subpoenaed, and that Mr. Neatherton, before the

indicting grand jury, testified as to the types of documents in his possession. According to Mr. Weaver, Mr. Neatherton also told the indicting grand jury that it could see any of these documents at any time it desired. Mr. Weaver also testified that at his direction, postal inspector Quinton Ferguson, an accountant, examined these documents and testified before the indicting grand jury as to his analysis of them. Thus the only summary of matters presented to the indicting grand jury of evidence which had been received by the first grand jury was in the sworn testimony of Neatherton and Ferguson.

Mr. Addis testified that he presented to the indicting grand jury copies of depositions of the defendants which had been taken in other proceedings of a civil nature. He testified that he briefly summarized the depositions for the grand jury and made complete copies available for the grand jury's inspection. His remarks to the grand jury in reference to the depositions were apparently unsworn. A portion of Mr. Addis' testimony before this court is as follows:

"Q All right. Suppose you tell us about that, now, what depositions, who did the summarizing, and what was said?

A There was some evidence in the deposition that we considered incriminatory. There was some that we considered in a very vague sort of way mildly exculpatory.

It was not the kind of thing where people exculpated others but merely exculpated themselves.

I briefly told the Grand Jury the kind of statements that were made in each deposition and provided the complete deposition to the Grand Jury for their inspection.

I outlined what could be found in each one, who made them, and left them with the originals.

Q Did you have recorded your remarks to the Grand Jury about what was contained in these depositions?

A I did not, sir. My remarks were extremely brief.

Q You did tell them, though, the Grand Jury that the depositions were in places incriminatory of these Defendants?

A No, sir, I don't believe I did. I think I said in places they could be read as being exculpatory.

Did you read to the Grand Jury the exculpatory portions?

A No, sir. I told them what kind of statements there were in there and then I left the originals with them, all the originals, and let them examine them themselves. . . ."

These depositions were presented to the indicting grand jury on 15 September 1977. On that day the indicting grand jury met for five hours and returned one indictment in an unrelated case. The next meeting of that grand jury was on 28 September 1977. On that day it met for one hour and forty-five minutes and returned the present indictment. Thus the grand jury had a maximum of six hours and forty-five minutes in which to consider depositions which contained 1160 pages of testimony.

Following the evidentiary hearing on the motion, this court has inspected in camera: (1) the transcripts of the testimony presented to the Urban grand jury; (2) the transcripts of the live testimony presented to the indicting grand jury, and (3) the depositions presented to the indicting grand jury.

The in camera investigation reveals:

1. Twelve witnesses testified before the indicting grand jury. The live testimony of these witnesses produced a transcript 184 pages in length.

2. The testimony of Ferguson and Neatherton to the indicting grand jury primarily related to the identity and significance of certain financial and other corporate records which had been gathered by the first grand jury.

**1212**

3. The live testimony before the indicting grand jury did not substantially differentiate the roles which each defendant played in the mail fraud scheme depicted in the indictment.

4. The depositions did differentiate the function of the individual defendants and contained exculpatory information with respect to one or more of the defendants.

The issue developed by the motion and the evidence thereon is whether or not the indictment should be dismissed because: (1) Ferguson and Neatherton had access to the grand jury exhibits; (2) of the nature of Ferguson and Neatherton's testimony to the indicting grand jury, or (3) of the manner in which the depositions were presented to the indicting grand jury. (At an early stage of the evidentiary hearing on the motion, the contention by the defendant that an unauthorized person appeared before the indicting grand jury collapsed with the showing that Mr. Weaver was fully authorized to appear before the grand jury prior to the time of its first meeting.)

■ While this court is of the opinion that the government attorneys could properly entrust the grand jury records to Neatherton for safekeeping and to Ferguson for expert analysis and testimony, it also concludes that if such were a violation of Rule 6(e), Fed.R.Cr.P., it would not be a violation which would justify dismissal of the indictment. See *U. S. v. Dunham Concrete Products, Inc.*, C.A. 5, 1973, 475 F.2d 1241, 1248, *cert. denied*, 414 U.S. 832, 94 S.Ct. 65, 38 L.Ed.2d 66.

■ With regard to the testimony of Ferguson and Neatherton, to the extent that it summarized documents acquired by the first grand jury, it was not objectionable because the testimony was sworn, the entire mass of documents was available to the grand jury, and the testimony was sufficient in scope to give the jury reasonable understanding of the probative value of the documents. See *U. S. v. Hodge*, C.A. 5, 1974, 496 F.2d 87.

■ Whether or not the government's procedure in presenting the deposition evidence to the indicting grand jury justifies a dismissal of the indictment is the most difficult problem raised by the motion and the evidence thereon. This court does not have the authority to pass on the sufficiency of the evidence before a grand jury to support an indictment, *U. S. v. Calandra*, 1973, 414 U.S. 338, 343, 94 S.Ct. 613, 38 L.Ed.2d 561; *U. S. v. James*, C.A. 5, 1961, 290 F.2d 866, 869, 890. The court, however, does have the authority to assess the procedure utilized by the government in dealing with the grand jury, when a substantial charge is made that such procedure was not appropriate to the responsibility of the grand jury and the constitutional right of a citizen to indictment by grand jury. See *U. S. v. Hodge, supra.* See also Rule 6(e)(2)(C)(ii), Fed.R. Cr.P.

In commenting on the grand jury's responsibility, the Supreme Court in *Branzburg v. Hayes*, 1972, 408 U.S. 665, 701, 702, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626, observed:

" . . . The role of the grand jury as an important instrument of effective law enforcement necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it. To this end it must call witnesses, in the manner best suited to perform its task. 'When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served by a thorough and extensive investigation.' . . . A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' . . . It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made. . . . "

■ The present case involves five persons each of whom allegedly participated in a common scheme to defraud in violation of 18 U.S.C. § 1341. From the record before the indicting grand jury, it appears that

each defendant played a unique role in relation to the scheme. A careful consideration of the individual conduct of each defendant was, therefore, essential to the grand jury and well within the standard of care contemplated by *Branzburg v. Hayes, supra.* Without such, the grand jury could not reasonably have determined, with respect to each individual, whether probable cause existed to believe that, with the intent to defraud, he knowingly joined in the execution of a scheme to defraud. (Clearly such scienter and specific intent are major elements of the alleged offense. See *Blachly v. U. S.,* C.A. 5, 1967, 380 F.2d 665, 671; *U. S. v. Perkal,* C.A. 4, 1975, 530 F.2d 604, 606; *U. S. v. Diamond,* C.A. 5, 1970, 430 F.2d 688.) Likewise, without some reasonably careful scrutiny of each defendant's conduct, the grand jury could not have fulfilled its obligation to protect citizens against unfounded criminal prosecution and the enormous consequences that are attendant on any criminal prosecution, well-founded or otherwise. *U. S. v. Calandra, supra.*

The importance of the deposition evidence to the grand jury function becomes apparent when that evidence is contrasted with the live testimony. The deposition testimony focused far more extensively on the individual activities of each of the defendants than did the live testimony. This court does not know what use the grand jury made of the depositions, but it is not reasonable to assume that the grand jury, unaided by a competent expert witness, could have read and understood the 1160 pages of deposition testimony in a session of six hours and forty-five minutes a part of which was occupied by other matters. Without a thorough understanding of the deposition testimony, the grand jury could not possibly have performed its tripartite duty to make a careful investigation, to determine probable cause, and to protect citizens against unfounded accusation. The court, therefore, concludes that the procedure employed by the prosecutors in their presentation of the deposition testimony to the grand jury was so inconsistent with the responsibility of the grand jury as to require a dismissal of the indictment.

Such a dismissal would, of course, be without prejudice to the right of the government to seek a reindictment, *Robinson v. U. S.,* C.A. 5, 1960, 284 F.2d 775. Because of this, it is appropriate to note that this court does not hold to the view urged by the defendant that a summary of testimony is per se impermissible for use by the grand jury. On the contrary, this court is of the opinion that a responsible summary of the deposition evidence involved in this case by a sworn competent witness would have been of substantial benefit to the indicting grand jury and totally in accord with controlling precedent in this Circuit. See *U. S. v. Hodge* and *U. S. v. Dunham Concrete Products, supra.* It is the opinion of this court that under the facts of this case, the prosecutor's failure either to read the deposition testimony in its entirety to the grand jury or provide the grand jury with a thorough summary by a sworn competent witness was the specific deviation from the applicable standard of care that requires a dismissal of the indictment.

DONE AND ORDERED in Chambers at Orlando, Florida, this 5th day of January, 1978.