**UNITED STATES of America**

v.

**James J. MAHONEY.**

**Crim. No. 79–223.**

United States District Court,
E. D. Pennsylvania.

Aug. 5, 1980.

John Rogers Carroll, Philadelphia, Pa., for defendant.

Louis Ruch, Asst. U. S. Atty., Philadelphia, Pa., for government.

## OPINION

**JOSEPH S. LORD, III, Chief Judge.**

Defendant has moved for disclosure of all grand jury transcripts and for dismissal of the superseding indictment. Two grand juries heard evidence in this case. The first grand jury heard testimony and subpoenaed documents without returning an indictment. The second grand jury, empanelled June 29, 1979, handed down the original indictment on October 5, 1979 and a superseding indictment on November 30, 1979. The defendant moves under Fed.R.Crim.P. 6(e) [1] for disclosure of all the transcripts of all proceedings before all grand juries that heard evidence in this case, alleging that grounds exist to dismiss the indictment because of matters occurring before the grand jury.

### I

■ There is a long-standing policy in federal courts to enshroud grand jury deliberations in secrecy. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958). The Supreme Court has cited with approval the reasons for the secrecy as set forth in *United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954):

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil, supra*, 441 U.S. at 219 n.10, 99 S.Ct. at 1673 n.10, 60 L.Ed.2d at 165 n.10; *Proctor & Gamble*, 356 U.S. at 681 n.6, 78 S.Ct. at 986 n.6.

■ The decision to permit disclosure is within the discretion of the trial court judge who must assess whether the need for disclosure overbalances the requirements of secrecy. *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959); *In Re Grand Jury Proceedings*, 309 F.2d 440, 444 (3d Cir. 1962). In *Proctor & Gamble*, the Supreme Court held that grand jury secrecy "must not be broken except where there is a compelling necessity. There are instances when that need will outweigh the countervailing policy. But they must be shown with particularity." 356 U.S. at 682, 78 S.Ct. at 986. In later cases the Supreme Court has adhered to the same standard. *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States*, *supra*. Some commentators and courts have viewed *Dennis* as representing a liberalizing trend to open up grand jury deliberations, since the court recognized "the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." 384 U.S. at 870, 86 S.Ct. at 1849. *See, Allen v. United States*, 390 F.2d 476 (D.C.Cir.1968); 1 Wright Federal Practice & Procedure, Criminal § 108. Nonetheless, the Court in Dennis did not alter the particularity test. Rather, it noted that, "it cannot fairly be said that the defense has failed to make out a 'particularized need.' The showing . . . goes substantially beyond the minimum required by Rule 6(e) and the prior decisions of this Court." 384 U.S. at 872, 86 S.Ct. at 1850.

---

**1.** The relevant portion of the rule is as follows:

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made:

.    .    .    .    .

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

Rule 6(e)(3)(C)(ii).

In *Douglas Oil*, the most recent Supreme Court case on standards for disclosure, the Court reiterated the particularity test and observed that the request for disclosure should be narrowly tailored to the asserted need for disclosure. 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167.

The burden is on the party seeking disclosure to show a particularized need for that disclosure. *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167; *Pittsburgh Plate Glass Co.*, 360 U.S. at 400, 79 S.Ct. at 1241. Thus mere speculation that there was, for example, prosecutorial abuse in the grand jury proceedings is not enough to justify disclosure. *United States v. Edelson*, 581 F.2d 1290 (7th Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979). In short, grand jury deliberation should not be opened solely for discovery purposes. *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 486, 490 (E.D.Pa.1962).

When the grand jury has completed its work, obviously the policy reasons for secrecy are lessened, and in this light the Supreme Court has held that at that time "disclosure is wholly proper where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940). Concomitantly the burden on the movant to show a particularized need is also lessened. *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167. In fact of the five reasons cited in *Proctor & Gamble* only one remains, the concern for "encourag[ing] free and untrammeled disclosures by persons who have information with respect to the commission of crimes." The other four reasons for secrecy are related to the functioning of a particular grand jury. The encouragement of "free and untrammeled disclosures," however, is a concern for the operations of future grand juries. Thus it is supported by policy considerations not to be lightly dismissed. *Westinghouse Electric Corp.*, 210 F.Supp. at 490. Indeed, the Su-

preme Court has admonished that although the interests in secrecy are reduced when a grand jury has finished its work they are not altogether eliminated. *Douglas Oil Co.*, 441 U.S. at 222, 99 S.Ct. at 1674, 60 L.Ed.2d at 167.

It is against this background of disclosure jurisprudence that the defendant's motions must be tested.

## II

The defendant asserts that almost all the evidence heard by the indicting grand jury consisted of summaries that did not present a fair and accurate portrayal of matters occurring before the first grand jury. In essence the defendant argues that the grand jury records he has seen [2] reveal such prosecutorial misconduct that, if the whole record were viewed, might well rise to a level necessitating dismissal of the indictment.

The defendant offers four specific examples:

a) failure to present information regarding the mass of documents subpoenaed by the first grand jury;

b) failure to summarize prior inconsistent statements when summarizing the later testimony of witnesses;

c) probable inaccuracy in the summary of a particular witness's testimony;

d) presentation of incomplete summaries of testimony of certain witnesses.

Defendant's Memorandum in Support of his Motion for Disclosure.

In most cases involving Rule 6(e) motions based on probable grounds for a motion to dismiss, disclosure is denied on the ground that the movant has not made the requisite showing of particularized need. *See 8 Moore's Federal Practice*, ¶ 6.05, at 6–75 (1980). Although it is difficult to make out a showing without inspecting the minutes,[3] as a practical matter at least one commentator has suggested that it is of no major

---

**2.** By orders of March 28 and April 8, 1980, grand jury attendance records, and transcripts for September 21, September 28, October 5 and November 30, 1979 were released to the defendant.

**3.** *See Pittsburgh Plate Glass Co., supra*, 360 U.S. at 407–09, 79 S.Ct. at 1244–45, Brennan, J., dissenting.

importance, since an indictment is rarely dismissed because of what happened before the grand jury. *Wright, supra,* § 108 at 188.

There is a presumption of regularity in grand jury proceedings that inhibits routine searching behind the indictment to test its basis. The seminal case in this regard is *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and the relevant paragraph merits quoting in full:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Id.* at 363, 76 S.Ct. at 408–409 (footnote omitted). Thus, indictments will stand if based as in *Costello* entirely on hearsay evidence.

In several cases decided after *Costello,* the Third Circuit limited the apparent breadth of that case by defining circumstances in which the use of hearsay would be improper. In *United States v. Wander,* 601 F.2d 1251, 1260 (3d Cir. 1979) the court of appeals without explicitly doing so appeared to endorse the rule set forth in *United States v. Estepa,* 471 F.2d 1132 (2d Cir. 1972). In *Estepa* the Second Circuit held that an indictment based on hearsay would be invalid if non-hearsay evidence was readily available, if the prosecutor misrepresented the evidence as direct testimony,

and if there was a high probability that the grand jury would not have indicted had they heard the direct testimony. *Id.,* summarized in *Wander,* 601 F.2d at 1260. As a gloss on the principle enunciated in *Costello, Estepa* serves as a check on the generally unreviewed *ex parte* procedures of the grand jury. *See also United States v. Arcuri,* 282 F.Supp. 347 (E.D.N.Y.), *aff'd,* 405 F.2d 691 (2d Cir. 1968), *cert. denied,* 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969).

In *United States v. Serubo,* 604 F.2d 807 (3d Cir. 1979), the defendants argued on the basis of grand jury transcripts obtained as *Brady* material that prosecutorial misconduct during the grand jury proceedings tainted the indictment so that it should be dismissed. The district court had found that although the prosecutor's behavior was "generally improper, reprehensible and unacceptable," 604 F.2d at 816, quoting from the record, there was sufficient evidence to support the return of the indictment. Although the court did not dismiss the indictment,[4] it admonished that the "right of indictment by an *unbiased* grand jury is guaranteed by the fifth amendment," *id.* (emphasis added), and cited *Costello* as support. If on remand the district court found the grand jury proceedings biased, dismissal would be proper. The court rooted its authority to dismiss an indictment for prosecutorial abuse in its supervisory powers to preserve and protect "the appearance and the reality of fair practice before the grand jury, an interest which could justify imposition of a prophylactic rule in a proper case." 604 F.2d at 817.

There is a fundamental difference between the circumstances in *Costello* and those in *Serubo.* In *Costello* the issue for the Court turned on the competency of the evidence on which the grand jury based the indictment. Although sufficient for a finding of probable cause, the evidence in question would have to overcome hurdles in yet

---

**4.** Since the material showing prosecutorial abuse was all from the first grand jury, the court remanded for review of the second grand jury record. If the misconduct was confined to the first grand jury, the court held that the indicting grand jury would have been unaffected by the prosecutor's "effort to create bias or prejudice," *id.* at 818, and the indictment could be sustained.

a second arena, at trial. In a case like *Serubo*, the abuse would go virtually unchecked, for it would have affected the grand jury process at its core; that is, the jurors themselves not merely the evidence before them would have been tainted.

## III

By alleging that the Government's summaries in the instant case were incomplete and at times inaccurate, the defendant asserts that the indicting grand jury was biased by the prosecutor's presentation of evidence. The court of appeals in *Serubo* set out a standard by which to measure prosecutorial misconduct. It held that "if there is evidence that the challenged activity was something other than an isolated incident unmotivated by sinister ends, or that the type of misconduct challenged has become 'entrenched and flagrant' in the Circuit," then dismissal would be appropriate. 604 F.2d at 817, *quoting United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980).[5] Consistent with this focus on institutional concerns, the court held that actual prejudice to the defendant need not be shown in order for the court to exercise its supervisory powers. *Serubo*, 604 F.2d at 817.

The defendant raises his most compelling argument in his challenge to the summarization procedures used by the prosecutor. The Third Circuit has not had to address the issue of the use of summaries in grand jury proceedings. In *Wander* the transcripts from the first grand jury were read to the second grand jury, which returned the indictment. In *Serubo*, the court of appeals could not determine from the record whether the transcripts of testimony before the first grand jury were transferred to or considered by the second grand jury. The court did not intimate whether it would view differently a presentation of summaries as distinct from transmittal in some form of the whole record.

■■■■ The use of summaries has been accepted by some courts, rejected by others.[6] The arguments against the use of summaries are powerful. In its origin, the grand jury was designed to serve as a buffer between an accused and the government by preventing an accused from being forced to trial unless a jury of his or her peers found probable cause to indict. Even though this concern for protecting a putative defendant still obtains, the fact that grand jury hearings are *ex parte* and secret creates possibilities for unchecked and uncheckable prosecutorial abuse. It is self-evident that governmental investigative forces engage in necessary work to uncover and bring to trial persons alleged to have engaged in criminal misconduct. It should be equally self-evident that the government that justly administers its criminal law system does so without abusing its prerogatives. Indeed this is not simply a reformulation of the principle that the means are as important as the end. Rather, it is a recognition that the end, the fair administration of criminal

5. In *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972), the court of appeals had held that pretrial disclosure would be appropriate when a showing had been made of "substantial likelihood of gross or prejudicial irregularities in the conduct of the grand jury."

6. *Compare United States v. Schlesinger*, 598 F.2d 722 (2d Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979) (use of summaries analyzed under *Estepa* test and found valid); *United States v. Brown*, 574 F.2d 1274 (5th Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 720, 58 L.Ed.2d 704 (1978) (use of summaries not an abuse of grand jury procedures, since grand jury function is not adversarial, but only to determine probable cause); *United States v. Carcaise*, 442 F.Supp. 1209 (M.D.Fla.

1978) (summary testimony is not *per se* impermissible); *United States v. International Paper Co.*, 457 F.Supp. 571 (S.D.Tex.1978) (use of summaries for most witnesses held valid), *with United States v. Braniff Airways, Inc.*, 428 F.Supp. 579, 584 (W.D.Tex.1977) (prosecutor not free "to summarize and exerpt whatever it may choose to pick from the record of the original grand jury"); *In Re May 1972 San Antonio Grand Jury*, 366 F.Supp. 522 (W.D. Tex.1973) (second grand jury can evaluate testimony given before another grand jury only if it sees it in its entirety); *In Re Grand Jury Investigation of the Banana Industry*, 214 F.Supp. 856 (D.Md.1963) (summaries cannot be used, since they satisfy only the convenience of the prosecutor at the expense of fairness to the criminal defendant).

justice, *requires* a just means. In this regard, the use of summaries of testimony in grand jury proceedings is inherently suspect. Stated another way, a defendant's motion for disclosure based on a claim that summaries were used, states a "particularized need," and justifies disclosure should the equities so permit.[7] It should be noted that in this case the need for secrecy is greatly reduced, since the grand jury has completed its work and returned an indictment.

■ For purposes of this analysis, I am defining "non-hearsay evidence" to include the reading of the transcripts *in toto.* Thus, under the three-prong *Estepa* test as set forth in *Wander,* in this case non-hearsay evidence (transcripts) is readily available. Assuming the Government's strongest case, that the summaries were identified as such and the grand jury was not under any misapprehension as to the value of the material it was hearing, there remains the requirement under *Estepa* that there be a high probability that the grand jury would not have indicted had non-hearsay evidence been offered. Whether under *Estepa* the indictment should be dismissed can only be determined by examining the summaries themselves to assess their accuracy and fairness.[8]

The question then is to whom will disclosure be made: to the defendant or to the court for *in camera* review. Since institutional concerns are at issue, the motive of the prosecutor in using summaries is relevant. The prosecutor's burden is to demonstrate good faith in their use. This can be shown by the existence of a very lengthy record, portions of which are not relevant in the prosecutor's estimation to a finding of probable cause. It should be clear, however, that relevance alone as a justification

cannot be sufficient to demonstrate good faith, for it leaves in the hands of the prosecutor an editorial decision of grave importance. Rather, relevance can be argued as one of several factors in a carefully thought-out decision not to transmit the full transcript to the grand jury. Further, that the prosecutor provided the grand jury with opportunities for hearing or viewing the entire record, or portions in their entirety, would also show good faith.

■ In sum, there is a line to be drawn between mere administrative convenience and a carefully measured decision of expediency, with fall-back use of the transcripts possible through meaningful opportunity for grand jury review of the record.[9] If the prosecutor has shown good faith, *in camera* review is proper as a form of disclosure less destructive of the policy concerns behind grand jury secrecy than disclosure to the defendant. If, however, the prosecutor fails to demonstrate good faith, or the defendant rebuts the showing, disclosure will be made to the defendant.

### IV

At a hearing on July 18, 1980 on defendant's motions, the Government stated that the summaries presented to the second grand jury consisted of several kinds of evidence including some testimony that had been presented to the first grand jury, and investigator's interviews with witnesses.

As noted earlier, the second grand jury was empanelled June 29, 1979. From that date until sometime in September, 1979, it heard, in the prosecutor's words, "some bits and pieces of testimony." July 18, 1980 hearing. The summaries were presented over three or four sessions within a one-month period, until October 5, 1979 when

---

7. In light of this holding, it is not necessary for me to examine the other reasons defendant offered to justify disclosure.

8. The court in *Carcaise* speaks of a "responsible summary" given by "a sworn competent witness." 442 F.Supp. at 1213. It should be noted that the *Serubo* standard for assessing prosecutorial misconduct, *supra* note 5 & accompanying text, would be applicable at a later stage if after disclosure it becomes necessary to

determine whether to dismiss the superseding indictment because of misconduct.

9. In *Carcaise*, the court dismissed the indictment because the jury had at most six hours and 45 minutes in which it could have reviewed 1160 pages of deposition testimony of five defendants, each of whose conduct required careful consideration in order for the grand jury to determine whether probable cause existed. 442 F.Supp. at 1213.

the grand jury handed down the original indictment. At the July 18 hearing the prosecutor reported that to the best of his recollection a total of approximately two days was spent in presenting summaries, on one occasion for a half-day, on another for a full day, and on a third, summaries given by two agents and the prosecutor took up a half-day's sitting.

When asked why he did not present live witnesses, the prosecutor answered that it was "a matter of economy." He explained that to bring in live witnesses might have taken six months, whereas an agent could summarize the case in a matter of a few sessions within one month.

That economy is deemed a virtue in American life as well as jurisprudence is beyond cavil. Fashioning shortcuts to criminal prosecution, however, is another matter entirely, and one that mandates careful scrutiny. The prosecutor stated at the July 18 hearing that the person presenting summaries to the grand jury in some instances offered to read the transcript *in toto*, but the grand jury expressed a preference for summaries. In some instances transcripts were apparently left with the grand jury to review if it so chose. Under the standard formulated in section III, *supra*, such an offer did not provide sufficient "fall-back" use of non-hearsay material (transcripts) with meaningful opportunity for grand jury review of all the material. In sum, the prosecutor has not shown more than a concern for administrative convenience as a basis for using summaries. I therefore order disclosure of the transcripts of the sessions of the second grand jury to be made to the defendant's attorney.

Defendant's motion to dismiss the superseding indictment is denied.