USCA1 Opinion

 

 September 11, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2214 UNITED STATES, Plaintiff, Appellee, v. ROGER ALLEN DOANE, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Roney,* Senior Circuit Judge, ____________________ and Pieras,** District Judge. ______________ ____________________ Jonathan R. Saxe, by Appointment of the Court, with whom Twomey & ________________ ________ Sisti Law Offices was on brief for appellant. _________________ Barbara N. Bandfield, Trial Attorney, United States Department of ____________________ Justice, with whom Jeffrey R. Howard, United States Attorney, was on __________________ brief for appellee. ____________________ ____________________ _____________________ * Of the Eleventh Circuit, sitting by designation. ** Of the District of Puerto Rico, sitting by designation. PIERAS, District Judge. Appellant Roger Allen Doane, a ______________ licensed attorney practicing in Salisbury, Massachusetts, was convicted after a jury trial in the District of New Hampshire of bank fraud (18 U.S.C. 1344), interstate transportation of securities taken by fraud (18 U.S.C. 2314), and four counts of embezzlement (18 U.S.C. 656). On this appeal, he attacks his conviction alleging an incorrect jury instruction relating to Section 2314, insufficient evidence to sustain his conviction under Section 656, and an incorrect and prejudicial denial of two motions to suppress. Finding no merit in appellant's arguments, we affirm. Background Background __________ The various charges against appellant were based on a series of different transactions. The fraud-related counts involved a scheme devised and carried out by Doane in early 1987, the purpose of which was to obtain funds from the United States Savings Bank of America (hereinafter "USSBA") located in Seabrook, New Hampshire, and to deposit these funds in an overdrawn account maintained at USSBA for the benefit of a health care clinic called Primacare, which Doane owned. Doane created a sham trust and held himself out as its attorney while naming the girlfriend of a former employee as its trustee. The collateral given for the loan was a mortgage on a beach house already subject to four other mortgages which was owned by Marion Heffron, a USSBA employee who had been Doane's bookkeeper for several years and continued to receive money from him after being 2 employed by USSBA. Doane directed the submission to USSBA of an application for a mortgage loan to the trust and, using his influence over Heffron, directed her to draw a check in the amount of $131,500.00 for the benefit of Doane as attorney for the trust. He then directed his new bookkeeper to pick up the check and deposit it into a law firm trust fund account at the First National Bank of Boston ("FNBB"), located in Massachusetts. Soon thereafter, appellant drew a check on the FNBB account in the amount of $110,000.00, payable to Primacare, and four additional checks totalling $23,533.00 payable to himself for "fees and costs." The embezzlement-related counts involved two other USSBA loans, the proceeds of which Doane embezzled after the funds had been deposited in law office client trust accounts maintained at USSBA. The first loan, in the amount of $140,000.00, was obtained for Arthur and Valerie McCaskill, who were represented by Diane Loman, an attorney in Doane's office. The proceeds were to be used to pay off a pre-existing first mortgage on the McCaskills' home and to make disbursements identified by Loman on a settlement sheet; however, after the proceeds were deposited in a client trust fund account, Doane directed his bookkeeper not to pay off the pre-existing mortgage or make any of the identified disbursements. Instead, seven checks totalling $141,855.14 were issued for various other purposes, including three checks totalling $82,426.81 which were made payable to Doane for "fees and costs." Doane for a short period of time arranged that the 3 monthly payments on the pre-existing loan be paid out of law office funds, but then discontinued the payments. Doane eventually gave the McCaskills a check for $99,536.00, but later instructed his bookkeeper to place a stop payment on the check. The second loan was handled by Doane's law firm after the USSBA directed the borrowers, Gary and Darlene Richie, to use the services of Doane's firm. The loan proceeds, totalling $85,000.00, were deposited into a client trust fund account at USSBA. After closing, Doane directed that a check in the amount of $41,887.00 be sent to pay off the seller's existing mortgage. When Doane learned approximately two months later that the check had not been negotiated, he directed his bookkeeper to place a stop payment on the check. Thereafter, three checks totalling $41,762.94 were drawn on the account, all signed by and made payable to Doane for "fees and costs." USSBA eventually issued a treasurer's check to pay off the existing mortgage. Jury Instruction Jury Instruction ________________ Appellant asserts that the district court committed reversible error by submitting to the jury an aiding and abetting instruction without a correlative instruction that the mental state of an aider and abettor must be the same as the principal. The precepts controlling our review of a trial court's jury instructions are well established. Primary among them is the axiom that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). ________________ 4 With this directive in mind, we conclude that the district court's charge was not prejudicial, primarily because it was not in fact an instruction on aiding and abetting. In setting forth the elements required under 18 U.S.C. 2314 to prove interstate transportation of securities taken by fraud,1 the district court instructed the jury: It is not necessary for the Government to prove that the defendant actually transmitted or transported the money himself, as it is sufficient to prove that he caused such transportation to be done. Otherwise put, the defendant may be found guilty of a violation of Title 18, United States Code, Section 2314, if the jury finds beyond a reasonable doubt that the defendant committed the offense himself, or if it finds beyond a reasonable doubt that the defendant aided or caused the _______________ commission of the offense by others. Transcript at 94 (June 20, 1991) (emphasis added). We cannot agree with appellant's contention that this language constituted an instruction on aiding and abetting. The district court was merely explaining to the jury that in order to find ____________________ 1 18 U.S.C. 2314 provides, in pertinent part (emphasis added): Whoever transports, transmits, or transfers in inter-state or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transports or causes to be transported, or induces any person or __________________________ persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or persons of money or property having a value of $5,000 or more . . . . . . [s]hall be fined not more than $10,000 or imprisoned not more than 10 years, or both. 5 transportation in interstate commerce it must find that money was moved or caused to be moved by the defendant in interstate ____________________ commerce. The court used the word "aided" only to flesh out for the jury the meaning of the phrase "causes to be transported" as used in the statute. While the court's use of the word "aided" was perhaps ill-advised, it could not alone yield an instruction on aiding and abetting. The jury could not have concluded otherwise. The indictment, which was read to the jury on several occasions, did not charge the defendant with aiding and abetting. In addition, the court's charge included an instruction on specific intent, as well as instructions on voluntary and intentional conduct, which taken together required the jury to find that the defendant acted knowingly and intentionally. Under these circumstances, we determine that the trial court's instruction did not create a substantial risk of a miscarriage of justice. Accord Cupp, 414 ______ ____ U.S. at 147-48; Allen v. Commonwealth of Massachusetts, 926 F.2d ______________________________________ 74, 79-80 (1st Cir. 1991). Sufficiency of Evidence Sufficiency of Evidence _______________________ Appellant also asserts that the evidence adduced at trial was insufficient to sustain his conviction for embezzlement under 18 U.S.C. 656. Section 656 provides, in pertinent part: Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve Bank . . . embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank . . . or any moneys, funds, assets or securities intrusted to the custody or care of such bank . . . or to the custody or care any such agent, officer, director, employee or receiver 6 shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both. Appellant contends that the evidence against him was insufficient to show (i) that he was an officer, director, agent or employee, or otherwise connected in any capacity with USSBA and (ii) that the money involved in the offenses was not money of USSBA or entrusted to its care or to the care of its agent. We disagree. First, the evidence was sufficient to show that appellant enjoyed an agency relationship with the bank. See United States ___ _____________ v. Davis, 953 F.2d 1482, 1488 (10th Cir. 1992). The evidence ________ showed that (i) bank employees sought professional advice from appellant on matters related to the bank; (ii) the bank's accountant testified that Doane was "the bank's attorney"; (iii) appellant's employee acted as the sole closing agent on the loans, creating a fiduciary duty between the appellant's law office and the bank; and (iv) most strikingly, the bank required ________ one of the victims to use the services of appellant to obtain a loan. This final aspect of the evidence reflects the inescapable fact that an attorney who drafts and executes loan documents at the instigation of a bank acts as the bank's lawyer and seeks to protect the interests of the bank as a creditor.2 From these ____________________ 2 As a practical matter, when a bank "suggests" that a borrower use the services of a particular attorney, the bank is in effect requiring that the borrower use that attorney's services in order to obtain the requested loan. In addition, since the primary interest to be protected in a loan context is the interest of the bank as lender, the "suggestion" that a certain attorney be used is tantamount to an appointment of that attorney as a fiduciary of the bank. As a result, although the attorney might be paid by the borrower to act as its attorney for purposes of closing the loan, the attorney's primary mandate is to protect the interest of the bank. In other types of 7 facts, viewed in a light most favorable to the prosecution, the jury could have reasonably concluded that appellant was an agent of USSBA. Second, the funds which were embezzled were clearly "intrusted to the care of [a USSBA] agent," as required by the statute -- that agent being Doane himself. Appellant argues that he did not embezzle "funds . . . of [the] bank" within the meaning of Section 656 because title to the loan proceeds had already passed from USSBA to his clients at the time they were deposited into the client trust fund accounts. Assuming this fact to be true, Doane is not delivered from conviction under Section 656. The statute applies with equal force when the funds embezzled are under the custody of an agent of a federally- _____ insured bank.3 Once the funds passed into escrow and were deposited in client trust funds accounts maintained by appellant's law office, they were clearly "intrusted to [his] custody or care." His embezzlement of the funds while they were in his custody is conduct that falls squarely within the statute. ____________________ transactions where the bank is involved only peripherally and its interest is not directly at risk, a suggestion by an officer of a bank that a particular attorney be used does not similarly reflect a fiduciary relationship between the bank and the attorney. 3 The Court notes that all cases concerning embezzlement of bank funds or funds intrusted to the care of a bank are inapposite to this case. Cf., Golden v. United States, 318 F.2d 357 (1st Cir. 1963) (whether ___ ________________________ funds directed to bank official in his private capacity ever became ____ "funds" of bank is question of fact for jury, not a question of law); United States v. Mott, 603 F. Supp. 1322, 1323-24 (S.D.N.Y. 1985) _______________________ (bank initially used "funds of the bank" to reimburse bank employee who submitted fraudulent expense billings, despite fact that bank intended to obtain substantial reimbursement from clients at later _____________ date). 8 Suppression of Evidence Suppression of Evidence _______________________ Appellant's final issue on appeal involves the district court's denial of two motions he filed to suppress certain documents delivered to the Federal Bureau of Investigation by their custodian, a bankruptcy trustee, and by the president of the corporate entity whose records were delivered, which documents he contends were obtained by the government in violation of the Fourth Amendment. The government has offered several procedural and substantive reasons why the district court's orders should be upheld. We do not address each of these issues. The exclusionary rule provides that illegally obtained evidence, to which a timely objection was made, cannot be admitted into evidence. The rule reflects not a personal constitutional right of the person aggrieved but instead a judicially created remedy designed primarily to deter improper conduct by law enforcement officials. United States v. Leon, 468 _____________________ U.S. 897 (1984); Michigan v. De Fillippo, 443 U.S. 31 (1979). ________________________ None of the documents appellant moved to have suppressed were introduced into evidence at trial. As a result, even assuming arguendo that the motions to suppress were improperly denied, the ________ exclusionary rule provides no remedy in this case. Affirmed. ________ 9