Cowin, J.
A Norfolk County grand jury indicted the eight named defendants on charges relating to the obtaining of fraudulent loans from the Wollaston Credit Union (“WCU”). All defendants have moved to dismiss on the ground that the integrity of the grand jury proceeding was impaired. Defendant Louis G. Bertucci, Jr. (“Bertucci”) (indictments 95831-32) has also moved to dismiss on the ground that the indictments are insufficiently supported by the evidence presented to the grand jury, and on miscellaneous grounds relating to the adequacy of the indictments. Defendant John G. Bradley, Jr. (“Bradley”) (indictments 95837-39) has filed a similar motion reiterating Bertucci’s arguments, and all other defendants have joined Bertucci’s and Bradley’s motions “to the extent that they are relevant.” For the following reasons, the motions to dismiss are denied as to all defendants.
BACKGROUND
Over the course of fifteen days between August 4, 1992, and January 15, 1993, a Suffolk County grand juiy heard testimony from some nineteen witnesses and received into evidence over one hundred exhibits, comprising over 30,000 pages of documents, concerning the defendants' conduct in connection with alleged fraudulent banking activities at WCU. The Suffolk County grand juiy returned indictments against all the defendants in the present case on various charges. Thereafter, all the indictments were dismissed for lack of venue (Volterra, J.) when it was shown that none of the alleged wrongful activity had taken place within Suffolk County.
Following the dismissal In Suffolk County, evidence with respect to the same conduct was presented to a Norfolk County grand jury. At the Norfolk County proceeding, four witnesses testified over the course of three days between July 14 and July 29, 1993. The primary witness for the Commonwealth was Peter Darling (“Darling”), an investigator from the Attorney General’s Office, who had conducted the investigation into the WCU activity, and who had previously testified at length before the Suffolk County grand jury. As part of his sworn testimony, Darling not only described the results of his own investigation, but also summarized the testimony and introduced the evidence that had been presented to the Suffolk County grand jury.
Most of the 103 exhibits from the Suffolk County proceeding were assembled into five boxes[1] and introduced in Norfolk County as exhibit numbers 1 through 5. Before submitting each box to the jurors, Darling testified as to the contents of each of the individual exhibits and identified the particular defendant to whom the exhibit pertained. Darling also summarized the testimony of 16 of the 19 witnesses from the Suffolk County proceeding, and introduced the full transcripts of this testimony into evidence (Norfolk Ex. nos. 13-27, 31).[2] Other exhibits introduced individually (i.e., not contained in boxes) included a directive from the commissioner of banks regarding insider loans (Norfolk Ex. no. 8), and handwriting exemplars from the defendants Bertucci, Robert B. Dunphy and Robert Galardi (Norfolk Ex. nos. 9-11).
DISCUSSION
“(A]n indictment valid on its face should not be dismissed absent a showing that the defendant’s ability to obtain a fair trial is prejudiced.” Commonwealth v. Pellegrini, 414 Mass. 402, 405-06 (1993). A challenge to the validity of an indictment will only be successful if the motion demonstrates that (1) the evidence presented to the grand jury was insufficient to support the existence of probable cause, Commonwealth v. McCarthy, 385 Mass. 160 (1982), or (2) the integrity of the grand jury proceeding was impaired. Commonwealth v. O’Dell, 392 Mass. 445 (1984).
Impairment of the Integrity of the Grand Jury Proceeding
All the defendants assert that the indictments against them must be dismissed because the integrity of the Norfolk County grand jury proceeding was impaired, Commonwealth v. O’Dell, 392 Mass. 445 (1984), due to a variety of factors, including the government’s excessive reliance on hearsay evidence, the abbreviated nature of the second presentation, the overwhelming volume of documents presented, and certain inaccurate or false statements made by Darling. Their contention is that overall, “the Commonwealth’s presentment (sic) impaired the integrity of the grand jury process by making it impos *451 sible for the grand jury to weigh and consider the evidence” against each defendant. Memorandum of Law in Support of Defendant Louis G. Bertucci, Jr.’s Motion to Dismiss the Indictments, at 42.
Although the defendants’ argument does not rely exclusively on the hearsay factor, the Court notes that while “sound policy dictates a preference for the use of direct testimony before grand juries,” Commonwealth v. Bishop, 416 Mass. 169, 174 (1993), quoting Commonwealth v. St. Pierre, 377 Mass. 650, 655-56 (1979), “(i]t is axiomatic that an indictment may be based entirely on hearsay.” Bishop, supra, at 173; see Mass.R.Crim.P. 4(c); 378 Mass. 849 (1979). Since there is no showing that the prosecutor attempted to “deceive grand jurors by presenting remote hearsay in the guise of direct testimony,” Commonwealth v. Mayfield, 398 Mass. 615, 620 (1986), citing Commonwealth v. St. Pierre, 377 Mass. 650 (1977), the indictment is not rendered invalid because of the use of hearsay. Id.
Similarly, while recognizing that the defendants do not rely exclusively on their allegations that Darling made “improper conclusions, insinuative editorial comments or references, factual misstatements and/or simple mischaracterizations,” Letter Memorandum in Further Support of Defendant Louis G. Bertucci, Jr.’s Motion to Dismiss Indictments, at 10, n.3, the Court notes that these allegations are also insufficient to render the indictments invalid. There is no showing that the testimony, even if proven to be inaccurate,[3] was given with the knowledge that it was false or deceptive, was given with the intention of obtaining an indictment, and that it probably influenced the grand jury’s determination to hand up an indictment. Commonwealth v. Martino, 412 Mass. 267, 279 (1992); Commonwealth v. Pond, 24 Mass.App.Ct. 546, 551 (1987). Thus it is not necessary to inquire into the adequacy or competency of Darling’s testimony. Commonwealth v. Salman, 387 Mass. 160, 166 (1982).
The defendants also contend, in essence, that the totality of circumstances surrounding the Norfolk County proceeding rendered the indictments invalid because there was insufficient consideration of the evidence by the grand jurors. Massachusetts cases have not addressed this issue, and, at the Court’s request, the defendants have supplied case law from foreign jurisdictions to buttress their argument that the indictments were returned without meaningful grand jury consideration. Upon review of the principal cases submitted, United States v. Carcaise, 442 F.Supp. 1209 (M.D. Fla. 1978), and State v. Ciba-Geigy Corp., 222 N.J. Super. 343 (App.Div. 1988), the Court concludes that both cases are distinguishable, and that their reasoning does not compel the conclusion that dismissal of the instant indictments is warranted.
In Carcaise, a second grand jury convened after the first grand jury was discharged without returning an indictment. There, as here, sworn witnesses summarized the documentary evidence that had been introduced at the first proceeding. There, however, an unsworn witness summarized deposition transcripts containing over 1,160 pages of testimony. The District Court found no fault with the government’s use of sworn witnesses to summarize the previously subpoenaed documents; however, because the unsworn testimony could not be relied upon, and because “the deposition testimony focused far more extensively on the individual activities of each of the defendants than did the live testimony,” id. at 1213, the Court found that “(w)ithout a thorough understanding of the deposition testimony, the grand jury could not possibly have performed its tripartite duty to make a careful investigation, to determine probable cause, and to protect citizens against unfounded accusations.” Id.
The crucial factor in Carcaise was that the government’s presentation was wholly reliant on the jurors reading the transcripts since the summaries were unsworn. Here, Darling’s summaries were made under oath, and thus the summaries, which sufficiently differentiate the activities of each defendant, may be relied on in and of themselves. Furthermore, the documentary evidence, although voluminous, was introduced in a methodical fashion, with specific reference to the particular defendant to which each exhibit pertained. If the jurors wanted to review exhibits, they could have located and perused any supporting documentation with relative ease and speed. Compare Carcaise, supra; United States v. Van Engel, 809 F.Supp. 1360, 1367 (E.D. Wis. 1992), rev’d on other grounds, 15 F.3d 623 (7th Cir. 1993), cert. denied, 62 U.S.L.W. 3659 (1993); United States v. Samango, 607 F.2d 877, 882 (9th Cir. 1979); State v. Ciba-Geigy Corp., 222 N.J. Super. 343 (App.Div. 1988).
The second case cited by the defendants, State v. Ciba-Geigy Corp., supra, is less instructive. There, only one grand jury proceeding took place, during which only three of the original 23 grand jurors were present for each of the 20 days of testimony. Pursuant to a prior decision of the New Jersey Supreme Court, State v. Del Fino, 100 N.J. 154, 164 (1985), transcripts of the missed testimony were then provided to all jurors who had been absent, in order to qualify them as jurors. Because the transcripts were provided at 11:00 a.m. and the deliberations concluded at 1:30 p.m., the defendant was able to show that the absent jurors could not possibly have read the full transcripts, which they were required to do to qualify as jurors. By contrast, the Norfolk Counly jurors had no obligation to read the transcripts from the prior Suffolk County proceeding, but were free to rely on the testimony and evidence presented directly to them.[4]
Sufficiency of the Evidence
An indictment may be challenged on a motion to dismiss where the Commonwealth fails to present to *452 the grand jury “evidence to establish the identity of the accused . . . and probable cause to arrest him . . ." Commonwealth v. McCarthy, 385 Mass. 160, 162 (1982). Such a challenge is a “very limited departure from the principle that the adequacy of the evidence presented to the grand jury cannot be tested by a motion to dismiss ...” Kent B. Smith, Criminal Practice and Procedure §733, at Supp. 291 (1983 & Supp. 1994); accord Commonwealth v. Salman, 387 Mass. 160, 166 (1982); Commonwealth v. Robinson, 373 Mass. 591, 592 (1977), and cases cited. Bertucci asserts that the grand jury was presented with no evidence of criminal activity on his part, specifically that there was no evidence (1) that he was WCU’s agent (indictments 95832 and 95833); (2) that he made false statements on loan applications (indictment 95831); or (3) that he had the requisite mental state to assist defendant Robert B. Dunphy (“Dunphy”) in misapplying bank funds (indictment 95834). Bradley asserts that the grand jury was presented with no evidence of criminal activity on his part, specifically that there was no evidence that he made false statements on loan applications (indictment 95837).
For a valid indictment to issue, the grand jury evidence “need not have been sufficient to warrant a finding of guilt," Commonwealth v. Beldotti, 409 Mass. 553, 555 (1991), but only to establish probable cause to arrest. Commonwealth v. McCarthy, supra, 385 Mass. at 162. The grand jury evidence was sufficient to establish both identity and probable cause to arrest as to all indictments.
There is ample evidence that Bertucci was WCU’s agent. While the term “agent” has not been defined by Massachusetts state courts in the context of bank fraud, the First Circuit Court of Appeals, in United States v. Doane, 975 F.2d 8 (1st Cir. 1992), upheld a finding of agency based on facts very similar to those here. Although that case was decided under 18 U.S.C. §656, whose language is much broader than that of G.L.c. 266, §§52 and 53A, the court did not rely on that broad language but instead decided the case on the narrow definition of agency. Id. at 12; compare United States v. Payne, 750 F.2d 844, 854 (11th Cir. 1985) (relying on language in 18 U.S.C. §656 that includes not only agents, but those “connected in any capacity” with the bank). Under Doane, a finding of probable cause could be made on the following testimony: WCU required a closing attorney on its construction and mortgage loans (Tr. 7/14/93, at 8); Bertucci “did all of the real estate closings for Wollaston Credit Union” (Tr. 7/22/93, at 39); these closings took place at Bertucci’s office (Tr. 7/22/93, at 39, 69); Bertucci’s office was located “right around the corner” from WCU (Tr. 7/14/93, at 9); and approximately 80-90% of Bertucci’s law practice consisted of loan closings for WCU (Tr. 7/14/93, at 9; Tr. 7/22/93, at 69).
There is also ample evidence to support a finding of probable cause that Bertucci obtained loans from WCU “with intent to defraud, by a false statement in writing . . .” G.L.c. 266, §33. It is not necessary, as Bertucci asserts, to prove that Bertucci literally wrote the false statement himself. G.L.c. 266, §33; Commonwealth v. Duddie Ford, Inc., 28 Mass.App.Ct. 426, 439-40 (1990); Commonwealth v. Greenberg, 339 Mass. 557, 576-77 (1959) (finding of guilt warranted where defendant arranged loan to a third party with knowledge of false statement, and where he received a portion of the money obtained). There is sufficient evidence that Bertucci both knew of the false statements and caused them to have been made. As Bertucci concedes, “(i]t is undisputed that Bertucci signed [the loan] applications in blank” (Memorandum of Law in Support of Defendant Louis G. Bertucci's Motion to Dismiss the Indictments, at 30; see also Tr. 7/22/93, at 41); the proceeds of the loans went to Bertucci (Tr. 7/29/93, at 32-34); and Bertucci used the funds for purposes other than home improvements (Tr. 7/29/93, at 32-34).
The Court disagrees that there is insufficient evidence that Bertucci possessed the requisite mental state to find him guilty of intentionally assisting Dun-phy in the willful misapplication of bank funds. Proof of intent may be shown by circumstantial evidence. Commonwealth v. Costa, 407 Mass. 216, 225 (1990). The grand jury record contains sufficient circumstantial evidence to warrant a finding of probable cause that Bertucci intentionally assisted Dunphy. There is evidence that Bertucci and Dunphy were business partners (Tr. 7/22/93, at 52) and childhood friends (Tr. 7/22/93, at 69); loans for Dunphy using “straw” borrowers were closed at Bertucci’s office and payments to the “straws” were left at Bertucci’s office (Tr. 7/22/93, at 53, 59-60); several of Dunphy’s friends and associates had loans closed by Bertucci in their absence, and Bertucci sometimes signed their names (Tr. 7/22/93, at 69-70); on one loan, Bertucci’s secretary told Dunphy that she was signing as a “straw” for Bertucci, and left the check with Dunphy (Tr. 7/22/93, at 71).
As to defendant Bradley, sufficient evidence exists to support findings of probable cause as to all indictments against him. See Tr. 7/22/93, at 7, 9, 36, 38, 44, 115; Tr. 7/29/93, at 34-36, 57, 72. His assertion that exhibit nos. 64 and 66 are contradictory is irrelevant. Bradley does not deny that one of the documents sets forth evidence of criminal activity on his part. The Court will not inquire into how the grand jury weighed the various evidence. Bradley, like Bertucci, also misconstrues the plain language of G.L.c. 266, §33. There is no requirement that Bradley himself write the false statement, and there is ample evidence within the record that he was a source of the false representations upon which indictments 95837-95839 are based.
*453 Miscellaneous
Under the umbrella of their McCarthy claims, defendants Bertucci and Bradley raise several other issues.
There is no merit to Bertucci’s assertion that indictments 95831 (charging larceny by false pretenses) and 95832 (charging embezzlement by a bank agent) must be dismissed because they are mutually exclusive. Even assuming that they are mutually exclusive, “if the charges are of the same general character, and are manifestly inserted in good faith for the purpose of meeting the various aspects in which the evidence may present itself upon the trial, the prosecutor need not be required to elect upon which count he will proceed to trial.” 41 Am.Jur.2d Indictments and Informations §226 (1968 & Supp. 1994); accord Commonwealth v. Speckman, 326 N.C. 576, 579-80 (1990).
The Court disagrees that indictment 95832 (charging embezzlement by a bank agent) must be dismissed for failure to state a crime because the indictment and accompanying bill of particulars fail to allege that Bertucci was entrusted with possession of WCU’s funds. “In a ruling on a motion to dismiss for failure to state a crime, the judge is confined to a consideration of the defects appearing on the face of the indictment.” Commonwealth v. Clark, 393 Mass. 361, 363 (1984). The Court does not look to the bill of particulars since “(t]he specifications in a bill of particulars furnished by the Commonwealth in a criminal case do not. . . have the effect of derogating from an indictment which sufficiently avers a crime cognizable under our law." Id. at 364. The indictment itself accurately tracks the language of the statute, and is therefore adequate. Commonwealth v. Gill, 5 Mass.App.Ct. 337, 339 (1977); see also Commonwealth v. Martino, 412 Mass. 267, 279 n.8 (1992). Notably, the only statutory language not included in the indictment are the words “whether intrusted with the custody [of the property] or not,” making Bertucci’s assertion that the indictment should have alleged entrustment particularly baffling.
Bertucci’s assertion that indictment 95835 (charging forgery) fails to allege activity that constitutes forgery within the meaning of G.L.c. 267, §1, must fail for the same reasons set forth above, i.e., the indictment tracks the language of the statute, Gill supra, and is not defective on its face. Clark, supra.[5]
Indictments 95834 (charging aiding and abetting misapplication of bank funds) and 95836 (charging false statement by a notary public) are not duplicative since each crime requires proof of an additional fact. Commonwealth v. Jones, 382 Mass. 387, 393 (1981). A violation of G.L.c. 268, §6A, requires proof that Bertucci was an officer of the Commonwealth; a violation of G.L.c. 266, §53A, as charged in indictment 95834, requires proof that Bertucci aided or abetted an officer of a bank. Bertucci’s argument that a conviction on both charges would amount to double punishment is premature.
To the extent that Bradley and the other six defendants rely on the above four miscellaneous arguments, their motions to dismiss also fail.
ORDER
For the foregoing reasons, the motions to dismiss of defendants Robert B. Dunphy, Louis G. Bertucci, Jr., John G. Bradley, Jr., Robert Galardi and Arnold Friedman are hereby DENIED.

 This was not the case as to exhibits number 38, 39, 55, 65 and 92-102. Number 94, consisting of transcripts of deposition testimony of Robert Dunphy, was introduced in part as Norfolk exhibit number 7; number 95, containing minutes from meetings of WCU’s board of directors at which the loan activity was discussed, was introduced in part as Norfolk exhibit number 6. Exhibits number 38 and 39 were introduced in their entirety as Norfolk exhibit number 32 (see note 2 below). There is no indication of what happened to exhibits number 55, 65, 92-93 and 95-102.

 The three witnesses whose testimony was not summarized were Darling himself, John F. McKennedy and Gary K. Baker. Baker’s only function in the Suffolk County proceeding was to produce the tax records of various individuals and entities allegedly involved in the fraudulent activity. Tr. 11/20/92, at 134-44. These records, previously marked exhibit numbers 38 and 39, were introduced in their entirety to the Norfolk County grand jury age exhibit number 32. There is nothing in McKennedy’s testimony before the Suffolk County grand jury that appears essential.

 The Commonwealth refutes the contention that Darling in any way incorrectly summarized the Suffolk County testimony. The Court need not reach this issue.

 The fact that these motions are denied should not be viewed as approval by this Court of the practices here used, in particular, the mass introduction of documents. The motions are denied because, under the lenient standards of the appellate decisions, the record indicates adequate evidence to support the indictments and no impairment of the integrity of the grand jury. In another case, however, there may not be sufficient evidence to sustain the indictments. Further, this Court notes that this is simply an inappropriate procedure for presenting evidence to the grand jury.

 In his Reply Memorandum of Law in Further Support of Defendant Louis A. Bertucci, Jr.’s Motion to Dismiss the Indictments, Bertucci more explicitly asserts that no evidence of forgery was presented to the Grand Jury. The Court finds ample evidence at Tr. 7/29/93, at 52-56.